Case number 134450 Stephen Stockman v. GE Disability and Medical Plan, et al. Oral argument is not to exceed 15 minutes per side. Mr. Lanz for the appellants. May it please the court, my name is Scott Lanz. I represent the Defendant Appellants MetLife and General Electric Life Disability and Medical Plan. I would like to reserve three minutes for rebuttal. You may. The single issue in this case is whether Plaintiff Appellee Stephen Stockman is entitled to dismemberment benefits under the plan for the alleged permanent and total loss of function of his foot. Because this is a claim for ERISA benefits and the plan does not provide discretion to the claim administrator, this determination is for this court to make de novo based on the administrative record. Distilled to its essence, the question for the court is whether the record shows that Stockman has a permanent total loss of left foot function as expressly required by the plan or has function in his left foot as determined by MetLife. The following three undisputed facts from the record conclusively demonstrate that Stockman has function in his left foot. Number one, in May of 2011, a year and a half after the accident, Stockman walked into his doctor's office without any assistive device. He put full weight on his left foot and had only a mild limp. Although he complained at that time of some pain and swelling, he told his doctor that the pain was relieved by walking and the swelling was made worse when he was on his foot all day. Even though he was able to walk into the office unassisted, you don't deny that he did suffer some loss of functioning in the foot that was going to be permanent, correct? Yes, we don't deny it. He definitely suffered some permanent loss of function,  and in the plan he also had pretty much a non-functioning in that foot for a 12-month period under the requirements of the plan. Those things are not disputed, correct? Those are not disputed, that's correct. So when do you determine whether he has the permanent and total loss? Is it at the 12 months or the 12 months and one day or some other point? Well, again, the determination, whether the determination is made at 12 months or after, and that depends on the claim investigation, he can't make the claim or the claimant can't submit the claim until there has been 12 months of a permanent total loss, and then the claim is submitted, and then the claim would be investigated. Is it that he can't submit it or that he can't win the benefits? That is, suppose that whatever it is that happens, the medical evidence is quite clear that it's never going to improve. It is going to be permanent, and he files after a month. The way I read the plan is he can't get the benefits for 12 months. It's a waiting period, isn't that right? That's exactly right. And am I right that that's a waiting period for this non-severance? That is, correct me, if it were severed, would he get paid as soon as he filed? Yes, he would. Okay. Yes, but it's a waiting period in the event of the claim is based upon an alleged permanent total loss of function. You want to have some evidence. Exactly. We want some time in order to medically determine whether this alleged permanent loss is, in fact, permanent. So there's a 12-month waiting period before benefits would be payable. But at the end of that 12 months, it still requires evidence that there's a total loss of foot function and that that total loss is going to be permanent. And so the total loss would be determined to be what? Again, that would depend upon the medical evidence. Okay, so the medical evidence is he's never going to have the use of his foot as a foot. Don't you agree? Yes. If the medical evidence were that he would never have use of his foot as a foot and that that was permanent, then he wouldn't be entitled to benefits. And so you don't think the medical record supports that he can't use his foot as a foot is supposed to function? Absolutely not, because the medical evidence in this case clearly shows that he's walking. I mean, even if he's walking with the aid of a cane, as his doctor said, he would at times need to use a cane. But if he's able to walk on his foot, he's using his foot. That's the basic purpose of a foot is to ambulate. And even if he's ambulating with the use of a cane or with some assistive device. And again, a year and a half after this accident, he walked into his doctor's office without any assistive device. So clearly, he was using his foot as a foot. The purpose of a foot is to walk and ambulate. So if he couldn't walk, then that would be a permanent loss of his foot? That's correct. But didn't Dr. Del Valle conclude that Stockman had suffered a permanent loss of normal function of his foot, even though he retained some functionality? Yes. He suffered a permanent loss of the normal function of the foot. Yes, but the plan requires a permanent loss of total function. So if you lose normal function, as Appellant says, normal function would be the ability to run, to jump, to skip, to climb. But that's not what the plan requires. The plan requires the permanent loss of total function. Again, this is a dismemberment benefit. The idea is that you've lost all function in your foot. And if you're able to stand, put full weight on his foot as he could, if you're able to walk, even with the... That's more than walking. If he could stand, that would not be a permanent loss? I'm saying if you can't stand and put full weight. I mean, the basic purposes of a foot are to support... The basic purpose, it seems to me, is a permanent loss of the foot if you can't walk. But you're saying now if he can stand and put weight on it, that's not a permanent loss? Well, what I'm saying is what are the basic purposes of a foot? The basic purposes are to stand, to balance, and to walk. In this case, he could do all of those things. You weren't saying that standing alone was necessarily good enough. In this case, you've got standing and walking with the limp. Yes, I'm not saying that standing alone would be good enough, although I think you could make that argument that there's still some function in the foot, but that's not the record in this case. The record in this case is that he could do more than just stand. If the plan terms are in any way ambiguous, should that be construed against MetLife? Yes, it would be construed against MetLife, but clearly the plan terms aren't ambiguous. But aren't the plan terms susceptible to multiple interpretations? No, they're not. This plan expressly defines loss of foot as permanent and total loss of function. So that can't be interpreted in any other way. Otherwise, I mean, if you say it's not permanent, you're completely reading out of the plan the essential plan requirement that the total loss be permanent. It can't be interpreted any other way. There's no other reasonable interpretation. So again, I want to emphasize that the medical evidence in this case is that, and this is coming from his own doctor, was that there has not been a permanent total loss of function. His doctor was expressly asked... What you're really saying is that there is loss that is permanent, but it's not total, and there's loss that was total, but it wasn't permanent. Yes, and the plan doesn't pay for a loss which is temporary and total or for a loss which is permanent and partial. The plan expressly requires a loss that is both permanent and total. And again, I can't say it any better than Mr. Stockman's own doctor said it. He was asked, would this be then considered a total loss of function and considering those items of function that we were talking about, locomotion, standing, balance. His answer was, I would consider this a loss of normal function. Well, the plan doesn't pay for benefits for loss of normal function. It requires a loss of total function. And again, Dr. Barnett said, it is in my opinion that Stephen will never have a normal foot and can expect to have some functional impairment as time goes on. And he says, I expect Stephen for the rest of his life will require at times the use of a cane for brief periods. Correct. Maybe he will not use anything at all, but I don't anticipate him using nothing at all for long periods of time. Correct. Is that a fair reading? Yes, that's a fair reading. And again, so there are times when he may need to use a cane. There are times when he may not need a cane. But the point is that he has function in his foot. If you can walk, even with the use of a cane, it's clear that you have foot function. It's also true that it seems that if he does a lot of walking during a day, he gets tired or gets worse when he's used it a whole lot during a day. Is that fair? That's what he complained to his doctor, that if he's on his foot all day, he experiences more severe swelling. But he also said if he walks, at one point he told his doctor, if he walks, his pain is actually relieved by walking. And I want to emphasize three points about this medical evidence. We aren't asking this court to rely on the opinion of a medical expert retained by MetLife, although this is also in the record in the form of the opinion of Dr. DelVal. Rather, we're asking this court to base this decision on Dr. Barnett's objective medical records as well as on his opinion that Mr. Stockman regained at least some function in his foot. He was able to use his foot to stand, balance, and walk. And again, MetLife wasn't even present when Stockman's counsel took Dr. Barnett's sworn statement. So the opinions on which MetLife is relying, and we're asking this panel to rely, this was in response to questions from Mr. Stockman's counsel. This wasn't a deposition? No, it was just a sworn statement that was submitted to the record. It's a sworn statement, but at least parts of it are Q&A. That's correct. It's a question and answer from Mr. Stockman's attorney. And then the third point is that this... And these are some medical records, aren't they? Like the May 23 notes of the May 23, 2011 visit. That's a normal medical... Right. That's what we're saying. The key evidence are his office notes showing the recovery after the surgeries. And remember, the time that Mr. Stockman wasn't able to walk, that coincided with the time that he had this infection and he was having multiple surgeries. But the infection was healed. That's in the records as well, that when he went in in August of 2011, there was no longer any sign of infection. And the time that he couldn't walk coincided with the time that he underwent for this infection. He underwent six surgical debridements over a period of about eight months. And that's when he couldn't walk. But again, that's not a permanent condition. Once that infection was healed and once the surgeries ended and he had therapy, he was able to regain use of some function in his foot. Yes, it will never be normal, but he doesn't have a total loss of function. And again, this isn't just Meli's opinion. This is the opinion of his own doctor. And that opinion is uncontradicted by any other medical evidence in the record. In fact, it's shared by the only other medical opinion evidence in the record, which is the opinion of Dr. DelVal. Okay, your time has expired. Thank you. May it please the Court. My name is Joe McDonald and I represent the appellee in this case, Stephen Stockman. I do believe that your question, Judge Donald, was spot on. And I think for the first course of business here, we have to read out loud these words because when you put them all together, as opposed to what my colleague is offering, there is more to this than permanent and total. The loss of a hand or foot means that the hand or foot is severed at or above the wrist or ankle joint, or means the permanent and total loss of function of the hand or foot as the result of an accident after the loss has continued for at least 12 consecutive months. Now, my colleague is offering to you an interpretation of permanent and total as if it is in a vacuum. It uses the words at least. And in this record, even as the common individuals, Stockman and Dr. Barnett, in this case, have read it, you can find at Administrative Record 793 that when the application was filed, the first thing that Dr. Barnett wrote, he has not been weight-bearing left leg since 11-3-09. Permanency in this case is modified by the at least 12 months. And this is what Judge Rice had a substantial problem with. There are, in this case, the idea that you only have to be permanent for 12 months in order to secure the benefit. Let me ask you that because I was kind of interested in which one you were going to emphasize. Suppose what happens is that there is some traumatic injury and the doctor says, you're going to have to be in bed rest for 13 months and you're not going to be able to use it at all. And at the end of 13 months, it's going to be perfect. You can run, jump, skip, hop, whatever you want. Do you still win then? Yes. I win because in this policy, there are words that are not defined. They are not defined at all. And those words would be permanent, total, and function. Really, the word you're... For this argument, it's really permanent because I gave you total in my hypotheticals. And you're saying that continued for 12 consecutive months effectively defines permanent rather than defining a waiting period. Is that a fair statement? Yes. Okay. And as Judge Donald was pointing out, I think that there's another alternative perspective which we have offered in our brief. The definition of function, when it is analyzed, according to Webster's, is any of a group of actions contributing to a larger action. And so Stockman has lost parts of this use of his foot. He cannot run, he cannot jump, he cannot hop, and he walks with a limp. I just want to be clear. So this is a separate argument that, even if you're wrong on the first argument, you say, okay, this should be read as the permanent and total loss of some function of the hand or foot. What I just... Yes, Judge Box. What I just offered to you was, as we briefed it, and the concern that Judge Rice had. And the reason I offered two of them to you because there seems to be some recitation in the case law that ambiguity exists when at least two reasonable interpretations are found. And I think that... You've got two reasonable interpretations of two separate portions. I have two reasonable interpretations of those words all coming together. Well, when you say all coming together, as I understood our conversation, you first say, if he's down for 12 months, no matter how good he gets, you win because 12 months. That's, to me, linguistically separate from saying function means any function, some function. In terms of them being together, I don't know the name of the case. I think it's Wolf versus Quality Chemical, W-U-L-F. It does offer this idea that, if you're going to argue an ambiguity in this type of environment, you should at least be able to offer two reasonable interpretations of the contract language. So, Judge Rice was very concerned about the idea that when we have a variety of reasonable interpretations and we read MetLife's position, what we're finding here is that they have a different interpretation of permanent, and that even though you fall off the roof and you destroy your calcaneus bone, you've got to prove to them at all points in time that you are permanent forever. If that were the case, I'm certain that MetLife would have done a little more, at least to try to define what that was going to mean. If Stockman has the burden of demonstrating that he has to be permanent for the rest of his life, at least they could spare a little ink and make sure that that is clear. You can say, MetLife can look at the claim for the first 12 months, but then your use must never be available to them. They could use any abundance of terms to make that clear. It does nothing. Having it in the same paragraph, we're talking loss. So it starts out, loss means complete severance or something else. So doesn't that help the interpretation some? Because clearly, complete loss is up here, and then what we're talking about is how far up do you get to be total. When I read that, Judge Boggs, I read that as the first part of that sentence being applicable only to the total severance. And even as my colleague... But the phrase loss is defining both, right? Loss means severed or the language we're talking about. But those are two ways of getting to loss. Isn't that the grammatical structure? It could be. Well, that's what it says. Loss of hand or foot means severance or this language. Yes, I'd have to agree to that. It's a reasonable construct. The difficulty that I think is found here is that as MetLife continued to evaluate the appeal or the submissions of Mr. Stockman, in Administrative Record 131, you will find that after they reject their application before they file the appeal, and they do have some evidence of Stockman's injury and Stockman's surgeries, they say, thus claim has been carefully reviewed and according to the information provided to MetLife, we have not been provided with evidence that the loss has continued for at least 12 consecutive months. They have an opportunity there, even where we have a very limited submission to MetLife, I'll give you that, to highlight at least to him, you've got to be permanent forever. You can never walk ever. You can never stand ever. It's just simply not there. The difficulty that this argument brings, and I think that... Sorry, at the time of that rejection, was that less than 12 months after the accident, the one you were just speaking of? That was after 12 months. That was August 9th of 11. He fell off the roof, or fell off the ladder in October 20th of 09. Thank you. There is a point in this case that is brought up by my colleague that is difficult and we should just address it. And that is this split between total loss and normal loss. And there seems to be universal agreement as the panel has already noted, that for the first 12 months, both MetLife and Dr. Barnett agree that his foot never touched the ground. After 12 months, actually around the 15th month, you begin to see these medical notations where Stockman is coming into the office, he's walking, he has difficulty. But the important thing is as we call it normal, what is normal? I don't really have a good idea. But I know that this is what normal is. Normal is pain all the time. Normal is always using, or at least most of the time, using a cane, a crutch, a walker, or even a little scooter that he has. And the new normal takes eight Vicodin a day. Now if that's the new normal, then I really don't want to be normal. I'd rather just... That is from his statement, not from the medical records. That is from Dr. His using the scooter is early on, and then he might sometime in the future need a scooter if his arthritis worsens. Is that right? The scooter use, I don't know that it's confined, Judge, to the early days, like you are suggesting. When I say that the actual use of a scooter, that's the only thing I saw. If you have a citation, I'd be happy to look at it. But let me ask you one other thing about normal. Because the language doesn't say loss of normal function. It does not. If it did that, you'd be home free. And I'm sure they would have paid it if it says, we will pay you if you lose the normal function of the foot. So simply normal, other than it being a word that appears, he'll never be completely normal, he can do this, he can't do that. But that's not the definition, right? Normal is not really defined. Well, it's not defined. It's not in the language that we're interpreting. No, it's not. I'll give you that, Judge. It's not in the language that MetLife offers in this case, in its policy. But it is the policy. I agree. I agree. But I'm just, as we go to consider what normal is, we know that normal includes the total loss of his ability to run, to jump, to do any, to do certain functions. And so if we're going to be... It really takes us back to that's the issue, is does it mean certain function, some function, any function, or total function? That's the issue. Okay? So Judge Rice, in his argument, or in his decision, pointed us to the problem with that interpretation, which it really gives MetLife an unlimited opportunity to cite to any evidence, however small. And the point was not lost on me, because even if Stockman at 15 months or 18 months, if his doctor's encouraging him, look, do what you can. Take a few steps if you can. At that point, are we trying to convert any little bit of progress into the absence of a total loss? I don't think that's what this policy was designed to do. And I really have a problem, because throughout this record, there is encouragement from Stockman's physician to get out there, try to do what you can, and although he is continually having problems. Judge Rice, I think, hit it on the head, and he said, it gives them the luxury of citing to anything. Any small change, no matter how tiny, to say you no longer have a total loss. Your version is that any loss of function, however small, is not total, because we just talked about some function, any function. And then the question is, is either of those reasonable? Aren't we really on an aggregate definition of total? We could be. That's de novo for us. The final thing, and although my, it's always a pleasure to work with Scott, every chance I get, he offers to you something that I have to, two things really, that I have to talk about. One, in his reply brief, he offers you some Ohio workers' compensation cases to help determine, or at least some mild guidance as to what loss is of function. And the one thing I want you to know is that those cases are all the same package. They are rid of mandamus. They are so far afield from what we have in this case as a de novo review. And then the other thing is that in terms of the requirement that the equivalent that or amputation is very weak. In MetLife's, in its contract, it says so as it relates to thumb and finger on the same hand. We'll interpret those items as if, as if is the word that he uses, as if you had lost them through amputation. It does not do that here. But yet they are treating Stockman like he has to prove a total amputation. My time is running out and if you have any questions for me. Anything else? Thank you, Counsel. Thank you. Lance, you have three minutes for rebuttal. Why isn't it true that you're treating it as if it had been severed? I'm sorry? Why isn't it that you're treating it as if it had been severed? Well, again, this is an accidental death or dismemberment policy. The plan here is designed to pay benefits in the event of an accidental death or dismemberment. Now, it doesn't require literal dismemberment in case of a loss of a foot, but it requires a permanent and total loss of use. Again, we seem to be, my opponent seems to be dealing in an alternative universe or maybe an alternative policy where permanent doesn't mean permanent and total doesn't mean total. But this is what the plan says. This is the plan and this is what controls his right to benefits. And this plan says that loss of hand or foot means the hand or foot is severed at or above the wrist or ankle joint or means the permanent and total loss of function of the hand or foot. It really can't be any more clear that the word permanent and total are both in there. He wants to say, well, permanent really doesn't mean permanent. Total really doesn't mean total. They mean these other things. But this is what the plan says. And to interpret this in any other way would be to ignore the plain terms of the plan. And even the district court didn't find that this plan was ambiguous. It said, to the extent the plan is ambiguous. And clearly, this plan is not. With respect to the thumb and finger argument that he's making, what is the exact language of that portion? The exact language is that it says, loss of thumb and index finger of the same hand means that thumb and index finger are permanently severed through the third joint from the tip of the index finger and through the second joint of the tip of the thumb. But then he was quoting or something that was equivalent to that. I thought he was making the argument that there is analogous structure. Loss means it's cut off completely or something else. It also then says, permanent total loss of function of the thumb and index finger of the same hand means the loss of function as if such digits were permanently severed. In that one, there is a further definition of loss of function. There is, that's correct. This one there isn't, so we'll take that. This one there is not. I just want to be clear on what the language was. With respect to just a couple of other real quick points here, the scooter use, that's in his statement. There's no specific time for when he was using the scooter. But again, if you read the entire statement. There is something, isn't there, in the medical notes during the first year. Yes, exactly. If you look at the medical records, that's when he was restricted to the scooter. After that 12 month period, he was able to walk into his office. Even his own statement says, since October 20, I've not had use of my left foot and still do not have full use of this foot. He says, during the period of October 20, 2009 and October 20, 2010, I had continuous surgeries and no use of my left foot. But again, so the no use was during that first year when he was having the surgeries to treat the infection. After that, all of that is just from his own statement that is a year and a half down the road that's attached to his, it's not a medical statement. Right. And the same thing with this 8 Vicodin a day, that's in a statement, there's no time frame. But again, in May of 2011, when he was walking into his doctor's office, he did that and he said he was not taking any narcotic pain medication at that time. Counsel,  Thank you, Ron. Further questions? Thank you, Ron. The case will be submitted and the clerk may call the next hearing.